## DE ESTRADA v. SAN FELIPE LAND & WATER CO.

*(Circuit Court, S. D. California.   May 11, 1891.)*

EQUITY—LACHES—LAPSE OF TIME.

    Where a bill in equity discloses that complainant was informed as early as 1876 by her brother that her father, who died in 1848, had left a will devising to her certain land in California; that, after making some inquiries through her husband, she remained quiescent until 1883, when she learned that the land had been conveyed in 1850 to defendant's grantor by one assuming to act as executor of her father's will, and that the title was confirmed by the board of land commissioners under Act Cong. March 3, 1851, and that she did not bring suit until 1890,—her claim will be held to be stale notwithstanding it also appears that she was ignorant, and in great poverty, and a demurrer to the bill sustained.

In Equity.   On demurrer to bill.

*Lamar & Castle* and *W. H. C. Ecker*, for complainant.

*Hutton & Swanwick*, for defendant.

Ross, J.   This is a suit in equity, brought by the complainant to establish her alleged right to an undivided interest in the Rancho Valle de San Felipe, which was granted by the Mexican government on the 30th day of May, 1846, to Felipe Castillo, the father of complainant, and is situated in what is now San Diego county, Cal.   The original bill was filed herein on the 29th of January, 1890, and the amended bill, to which the present demurrer is interposed, was filed July 22, 1890.   In the amended bill it is alleged that the complainant is the illegitimate daughter of Felipe Castillo, who, it is alleged, died in the city of Los Angeles, Cal., in the year 1848, leaving four children surviving him, namely, the complainant, and Loreto, Manuel, and Refugio Castillo. It is alleged that Felipe Castillo died seised of the rancho in question, and that he left a will, by which he devised it in equal shares to his four named children, and appointed as the executor of the will one Augustine Olivera, a resident of Los Angeles; that Olivera declined to act as such executor, but that on the 25th of May, 1850, he, together with Loreto Castillo, Manuel Garfias, and Juan Foster, "in fraud of the rights of your orator herein, caused to be made and delivered to said Juan Foster a certain instrument in writing, whereby the said Loreto Castillo then and there pretended to and did declare himself to be the executor of the said last will and testament of said Felipe Castillo, and the agent of his said two brothers, said Manuel and Refugio, and empowered to sell said Rancho Valle de San Felipe;" that in and by said written instrument Loreto Castillo pretended to sell and convey to Foster the whole of the rancho; that Loreto was not at the time of the execution of the conveyance the executor of the will, nor had he any power or authority from Manuel or Refugio to sell their interest in the rancho, or in any manner to represent them, all of which, it is alleged, was well known at the time to Loreto, Olivera, Foster, and Garfias; that in the year 1855 Foster presented to the board of land commissioners (created by the act of March 3, 1851, to ascertain and settle the private land claims in California) a petition for the confirmation to him of the title to said rancho,

based upon the aforesaid grant from the Mexican government to Felipe Castillo, and upon the aforesaid conveyance from Loreto Castillo to Foster, in which petition complainant alleges "said Juan Foster knowingly, falsely, and fraudulently averred that he had purchased all the interest of said heirs of Felipe Castillo, deceased, under an order of court from Loreto Castillo, and that said Loreto Castillo was the executor of the last will and testament of said Felipe Castillo, deceased, and that he knew of no interfering claim to said rancho; that at the same time he well knew that your orator was one of the devisees under said will, and was entitled to a one-fourth interest in all of said rancho." It is further alleged that Olivera testified before the board of land commissioners that the heirs of Felipe Castillo consisted only of the three brothers, Loreto, Manuel, and Refugio, although he well knew that complainant was his daughter, and that under the terms of the will she was entitled to a share of the estate, of which will, it is alleged, he failed to inform the board, but, on the contrary, that he suppressed it; that the board of land commissioners, "imposed upon by the false and fraudulent evidence hereinbefore set forth, on the 3d day of December, 1855, granted the petition of said Juan Foster, and confirmed his pretended claim to the said Rancho Valle de San Felipe, declaring in the opinion of said board of land commissioners that the title to said rancho had been conveyed by Loreto Castillo, son and testamentary executor of said Felipe Castillo, deceased, to the claimant Juan Foster;" that thereafter, to-wit, August 6, 1866, letters patent were issued by the government of the United States to Juan Foster for the whole of the rancho. It is alleged that the deed from Loreto Castillo to Foster was recorded on the day of its execution in Los Angeles county, but never was recorded in San Diego county, where the land is situate, and that the defendant corporation, which, it is alleged, has succeeded to the rights of Foster, "at all times well knew all the facts of the fraud herein alleged, and had notice of the invalidity of the said deed or instrument made by said Loreto to said Juan Foster as aforesaid." The complainant alleges that she last saw her father in the city of Hermosillo, Mexico, in the year 1847, and never afterwards had any communication from him or any knowledge of him; that in the year 1851 she removed to Marysville, in this state, and in 1865 to Placer county, where she has since resided; that some time after her arrival in California,—"not earlier than the year 1876,"—she was told by her brother Loreto that her father had made a will, giving her some land in San Diego county, which was the first intimation she received of such devise; that Loreto informed her that he had sold his own interest therein, but that he had not sold hers, and that her interest still remained intact and vested in her; that subsequently complainant's husband "began to make inquiries concerning the reputed legacy of her father, and informed your orator that he had seen Loreto Castillo, who informed him that his sister Elena (your orator) had an interest in some land in San Diego county, willed by her father to her and her brothers, the said four children of Felipe Castillo, deceased; that he, the said Loreto, had sold his interest but had not sold her (your orator's) inter-

est;" that complainant never knew until the month of May, 1888, that the land devised to her by her father was within the Rancho Valle de San Felipe, and did not until then know of the deed from Loreto Castillo to Foster, or of the proceedings before the board of land commissioners, or of the patent issued to Foster. It is further alleged that Loreto Castillo, from the time of the execution of the conveyance to Foster until September 1, 1889, kept in his own possession, and concealed from complainant, the original will of Felipe Castillo, on which last-mentioned day he delivered it to complainant's attorney; that the will was never filed in any court or office, and was never theretofore made public, but was by Loreto Castillo, Olivera, Foster, and Garfias kept concealed for the purpose of defrauding complainant of her rights in the property; that complainant is an ignorant woman, unable to read or write in any language, and has heretofore been too poor to employ counsel or prosecute her rights. While the poverty of the complainant is much to be regretted, it does not constitute any legal or equitable ground for granting her relief which would be denied to her if rich. The legal and equitable rights of parties to controversies before the courts must be administered regardless alike of poverty and riches. Nor is the fact that complainant is ignorant and unable to read or write of itself sufficient to bring into action the aid of a court of equity in behalf of a claim and demand otherwise barred by lapse of time. Every one, not under legal disability, must assert his or her rights within the time prescribed by the rules of law or equity, as the case may be. It is true that the statutes of limitations applicable to actions at law do not apply to suits in equity, but courts of equity are governed by the analogies of such statutes. *Norris* v. *Haggin*, 136 U. S. 386, 10 Sup. Ct. Rep. 942. "A court of equity," said Lord CAMDEN, "has always refused its aid to stale demands where the party slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting the court is passive, and does nothing. Laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." *Smith* v. *Clay*, 3 Brown Ch. 639, note. This doctrine has been repeatedly recognized and acted on by the supreme court. *Speidel* v. *Henrici*, 120 U. S. 377, 7 Sup. Ct. Rep. 610, and cases there cited.

In the present case, the bill as amended shows on its face that as early as 1876 complainant was told by her brother Loreto that her father left a will, by which he devised to her an interest in some land in San Diego county; that he, Loreto, had sold his interest therein, but had not sold complainant's, and that she still retained hers; that subsequently complainant's husband " began to make inquiries concerning" the legacy, and Loreto told him substantially the same thing. There the complainant seems to have been content to rest for a period nearly three times as long as that prescribed by statute in California for the recovery of land in an action at law. In May, 1888, according to the averments of the amended bill, complainant first learned through her present

solicitor of the execution of the conveyance by Loreto to Foster in 1850, of the proceedings before the board of land commissioners under the act of congress of March 3, 1851, culminating in the issuance by the government to Foster of a patent for the entire rancho on the 6th of August, 1866; and yet she still delayed bringing suit until January 28, 1890, — nearly 40 years after the making of the deed by Loreto Castillo to Foster, and more than 23 years after the issuance to the latter of the government patent.   At least 14 years before she asked the aid of this court of equity she was informed that her father, who died in California in 1848, left a will, by which he devised to her an interest in land situated in San Diego county, and that her brother had sold his interest in the same land, but not hers.   Neither she nor her husband, who received the same information from Loreto, appear to have made another inquiry concerning the property, or to have taken a single step for the protection or enforcement of complainant's rights.   Yet complainant must be held to have known that whatever land her father owned in California at the time of his death, and devised to her, was subject to the consideration and adjudication of the board of land commissioners created by congress for the settlement of the private land claims in California, and that a petition for the confirmation thereof was by the law required to be presented to that board.   If she had gone there, she would have found from the records of that tribunal, according to the allegations of the amended bill, that Loreto Castillo claimed to act as the executor of the will of Felipe Castillo, and that he pretended to sell to Foster the entire Rancho Valle de San Felipe, of which Felipe Castillo died seised, and that the whole of it was confirmed to Foster, and patented to him, in fraud of her rights under the will; and it was incumbent upon her to assert her rights within a reasonable time thereafter.   According to her own averments, her brother Loreto told her of the will and of her rights under it as early as 1876, and subsequently gave the same information to her husband. Instead of enforcing she slept upon them for a period nearly three times as long as the statute of limitations prescribed by the state for the recovery of land in an action at law.   Under such circumstances a court of equity will remain passive.   An order will be entered sustaining the demurrer and dismissing the bill as amended, at complainant's cost.